Magistrate Judge Michelle L. Peterson

FILED ___ ENTERED
LODGED ___ RECEIVED

JUL 11 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO. MJ19-316 |
|---|---|
| Plaintiff, | COMPLAINT for VIOLATION |
| v. | Title 18, United States Code, Sections 113(a)(8) and 1153 |
| ANDREW PETER SOLOMON, | |
| Defendant. | |

BEFORE the Honorable Michelle L. Peterson, United States Magistrate Judge, at Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
### (Assault by Strangulation)

On or about March 24, 2019, in Whatcom County, Washington, on the Lummi Indian Reservation, Indian Country as defined by Title 18, United States Code, Section 1151, and within the Western District of Washington, ANDREW PETER SOLOMON, an Indian, did assault Jane Doe, an intimate and dating partner, by strangling Doe, and attempting to strangle Doe.

All in violation of Title 18, United States Code, Sections 113(a)(8) and 1153.

//
//

COMPLAINT/ANDREW PETER SOLOMON - 1
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

The complainant states in further support of this Complaint:

## COMPLAINANT'S BACKGROUND

1. I, Terry A. Getsch, am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July of 2018. I am assigned to the Seattle Division of the FBI and currently work from the FBI office in Bellingham, Washington. I was previously employed from 2014 to 2018 as a police officer and detective in the state of Georgia, and I have completed the Indian Country Basic Investigator Training Program through the Bureau of Indian Affairs. In my time as a law enforcement officer, I have participated in numerous investigations involving but not limited to assaults, rapes, arsons, thefts, drug crimes and other crimes on Indian Reservations.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

3. The facts set forth herein are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of cooperating witnesses, review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this Complaint is submitted for the limited purpose of determining whether there is probable cause in support of the application for an arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that ANDREW PETER SOLOMON has committed the crime of Assault by Strangulation in violation of Title 18, United States Code, Sections 113(a)(8) and 1153.

///

///

COMPLAINT/ANDREW PETER SOLOMON - 2
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

## SUMMARY OF PROBABLE CAUSE

4. On the evening of March 24, 2019, the Lummi Nation Police Department (LNPD) responded to domestic violence call on the Lummi Indian Reservation at approximately 8:25 p.m. The officers were directed to a location on the Reservation where ANDREW PETER SOLOMON (hereafter referred to as SOLOMON) had been blocked in by family members of the reported victim, who is referred to herein as "Jane Doe" to protect her privacy. The location in question is near Jane Doe's residence (hereafter referred to as "the apartment").

5. Upon arriving, LNPD officers located SOLOMON and noted that he had a torn shirt. The shirt was ripped in several spots, and SOLOMON had scratches on his chest, neck and face, and his right eye was black. One of the responding officers asked SOLOMON about the marks, and SOLMON would not say anything at first, but he then stated that Jane Doe swung on him. SOLOMON said that he had ripped his shirt himself and the black eye was from another prior incident. SOLOMON would not tell the officer about this other incident, and he refused to allow officers to take pictures of him. He stated that nothing happened and it was a misunderstanding. SOLOMON said that he and Jane Doe were in a dating relationship and they had two children together.

6. Jane Doe's father informed the officer that Jane Doe had called him and told him that she was throwing up blood and had been assaulted by SOLOMON. At the time officers arrived, Jane Doe was on her way to the hospital to seek medical attention. After speaking with LNPD, SOLOMON was allowed to depart the location.

7. After responding to SOLOMON's location, an officer went to the hospital to speak with Jane Doe. Jane Doe told the officer that she was currently dating SOLOMON, that they had been doing laundry, and that SOLOMON had been drinking. Jane Doe said they had been at the apartment when they got into a verbal argument, and SOLOMON grabbed her with one hand by the neck. Jane Doe thought SOLOMON used his right hand at the time. Jane Doe said that SOLOMON dragged her to the ground, and she then punched SOLOMON in the face. Jane Doe said that SOLOMON released her, and he told her that the

COMPLAINT/ANDREW PETER SOLOMON - 3
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

only reason he stuck around was for their boys. Jane Doe said she felt scared and was trying to breathe when SOLOMON grabbed her neck. She also said that it felt like SOLOMON was trying to squeeze harder when he grabbed her, and that she couldn't speak while he was squeezing. Jane Doe said all she could do while he was squeezing was try to breathe, as this was becoming difficult. After this happened, Jane Doe went into her apartment and called her father. While talking to her father, Jane Doe said she had a hard time breathing and talking. Jane Doe reported that she then went to puke because she felt like she couldn't breathe, and observed that she was puking blood. While talking to the officer, Jane Doe had pain swallowing her saliva. The officer observed marks on the left side of Jane Doe's neck, and observed that she had a swollen left hand. While at the hospital, an officer took photographs of Jane Doe's injuries.

8. On April 1, 2019, a LNPD officer located SOLOMON in the parking lot of the apartment while responding to a new report of a verbal domestic between SOLOMON and Jane Doe at the apartment. The officer arrested SOLOMON based on an outstanding Probable Cause Statement and citation (Assault and Battery 2nd Degree) previously issued for SOLOMON for the assault that had occurred on March 24, 2019. The officer advised SOLOMON of his *Miranda* rights, and SOLOMON stated "There's no proof," "I didn't do anything," and "I want my lawyer here."

9. I have reviewed the photographs taken of Jane Doe at the hospital by the LNPD officer. I observed three red horizontally aligned marks on the right side of Jane Doe's neck and one red mark on the left side of her neck. These marks appeared to be the size of human fingers and, based on my training and experience, indicate that Jane Doe's neck had been physically grabbed by an adult size right hand.

10. I assisted the LNPD in conducting additional interviews with Jane Doe and other witnesses who were at the apartment during the assault and/or had contact with Jane Doe directly following the assault. The following information was provided during these interviews.

COMPLAINT/ANDREW PETER SOLOMON - 4
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

11. During an interview on June 4, 2019, Jane Doe explained that her younger brother had been inside her apartment on the evening in question when SOLOMON assaulted her, and SOLOMON gave her brother a ride home after the assault occurred. Jane Doe also stated that a friend, WH, had been drinking alcohol with SOLOMON before the assault, and WH had been in a vehicle in front of the apartment when this incident occurred. Jane Doe said that SOLOMON and WH had purchased two Four Loko alcoholic beverages each when they were with Jane Doe earlier that day, and they had each consumed at least one of the beverages prior to the assault.

12. Jane Doe also stated that prior to the assault SOLOMON was exiting the apartment and she was on the balcony passing him to enter the apartment when SOLOMON grabbed her by the throat and began strangling her. SOLOMON used his right hand to squeeze her throat. Jane Doe said she could not breathe, and she was scared. SOLOMON continued to push Jane Doe as he strangled her, and she began to fall backwards. She was able to punch SOLOMON in the face with her left hand as they fell to the ground. SOLOMON landed on top of her, and her head hit the ground. Jane Doe said she "blacked out" and then remembered seeing SOLOMON over her. She believed she was blacked out for a few seconds. Jane Doe reported that SOLOMON drove away with her brother and WH, and she then called her mother and father. Jane Doe said that her cousins came over to the apartment following the assault and decided to take Jane Doe to the hospital for immediate treatment.

13. Jane Doe advised she had difficulty eating for at least a week after being strangled, and her head hurt the next day from when she hit the ground after SOLOMON fell on top of her. Jane Doe had a follow up medical appointment with the Lummi Health Clinic and a Lummi Physical Therapist.

14. Jane Doe's brother was interviewed and advised that on the day in question, Jane Doe and SOLOMON had been washing clothes at the laundry facility approximately 100 yards away from the apartment. He said that Jane Doe and SOLOMON left, and when they returned, Jane Doe was crying. SOLOMON came into the apartment with WH and Jane

COMPLAINT/ANDREW PETER SOLOMON - 5
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

Doe. According to Jane Doe's brother, the fight was outside of the apartment, and he did not hear what was happening. He said that he and WH walked out of the apartment afterwards and got into a vehicle parked by the stairs. He also said that SOLOMON and Jane Doe continued to argue on the balcony, but he could not see anything from where he was in the vehicle.

15. Jane Doe's father reported that he had received a phone call from Jane Doe after this incident occurred. Jane Doe told him that she had just been strangled by SOLOMON, and she was vomiting up blood while they were on the phone. Jane Doe's father was near the location where the assault occurred, and he was able to hold SOLOMON there until the police arrived. Jane Doe's father said that SOLOMON immediately yelled at him when he blocked him in, and that both of his nieces were helping out.

16. SOLOMON's friend, WH, reported that he had been with Jane Doe and SOLOMON on the day of the assault, and that they had been "bickering" back and forth. They were doing laundry, and they went and bought Four Loko alcoholic beverages before returning to the apartment. WH said that Jane Doe found text messages from another girl on SOLOMON's phone, and they began arguing. SOLOMON yelled at Jane Doe and told her that he was not coming back, and Jane Doe was shoving SOLOMON. WH said that he and Jane Doe's brother went downstairs and got in their car. While in the car, WH saw Jane Doe and SOLOMON physically fighting on the balcony above the car in front of the apartment. WH did not see SOLOMON choking Jane Doe or put his hand on the Jane Doe's throat. WH saw them pushing and shoving each other and saw SOLOMON shove Jane Doe, which resulted in her falling. This statement from WH conflicts with a prior statement he had provided to LNPD on the night of the assault, in which he had reported hearing yelling by SOLOMON and Jane Doe when they were at the apartment, but said he did not see anything happen between SOLOMON and Jane Doe.

17. One of Jane Doe's cousins reported that Jane Doe's mother had told her about the fight between SOLOMON and Jane Doe through Facebook. She said that she then went to the apartment to take care of Jane Doe's two children, and when she arrived, Jane Doe

COMPLAINT/ANDREW PETER SOLOMON - 6
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

was crying and having trouble breathing. This cousin also reported seeing red marks and possibly a scratch on Jane Doe's neck, and said she could see what appeared to be a hand print on Jane Doe's throat. Jane Doe's cousin thought she arrived at the apartment just after SOLOMON had strangled Jane Doe. She was worried about Jane Doe and urged her to go to the hospital. The cousin said that she then took Jane Doe's children to her apartment while Jane Doe went to the hospital for treatment.

18. Jane Doe's other cousin reported that she was contacted by her mother to go see Jane Doe and check on her after this incident had occurred. While checking on Jane Doe at the apartment, she observed a "little blood in the toilet," and was told by Jane Doe that she had vomited blood. This cousin saw scratches on Jane Doe's neck, and said Jane Doe was crying and having trouble catching her breath. She reported that she drove Jane Doe to the hospital, and during the drive, Jane Doe stated that she had been teasing SOLOMON and things got out of hand. This cousin said that she and Jane Doe did not discuss any additional details.

19. I have reviewed documents from the Lummi Nation Planning Department that confirm the apartment where the assault occurred is located on tribally owned trust land within the exterior boundaries of the Lummi Indian Reservation.

20. I have reviewed a copy of SOLOMON's Lummi Certificate of Indian Blood, which shows SOLOMON is an enrolled Lummi Nation member with a blood quantum of 3/8. The Lummi Nation is a federally recognized Indian tribe.

21. I have reviewed medical records from the Emergency Room where Jane Doe was treated on March 24, 2019. The medical records indicate that Jane Doe reported being strangled by the father of her children to her medical providers that evening, and that she had neck pain following the strangulation. The medical provider who performed the examination noted two linear red marks on the left side of Jane Doe's neck.

//
//
//

COMPLAINT/ANDREW PETER SOLOMON - 7
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

## CONCLUSION

22. Based on the foregoing, I submit that probable cause exits to believe that ANDREW PETER SOLOMON has committed the crime of Assault by Strangulation in violation of Title 18, United States Code, Sections 113(a)(8) and 1153.

Terry A. Getsch, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

DATED this 11th day of July, 2019.

Michelle L. Peterson
United States Magistrate Judge

COMPLAINT/ANDREW PETER SOLOMON - 8
USAO 2019R000521

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970